B. E. BARNES, Appellee,

v.

Anna Louise HELFENBEIN, formerly
Welch, and Stephen A. Welch,
Appellants,

and

Margie M. Morey, formerly Barnes,
Intervenor.

No. 45258.

Supreme Court of Oklahoma.

March 16, 1976.

Hall, Estill, Hardwick, Gable, Collingsworth & Nelson by James C. T. Hardwick, Tulsa, for appellee.

Bagwell & Bagwell by Carl Bagwell, Oklahoma City, for appellant.

Holliman, Langholz, Runnels & Dorwart by Frederic Dorwart, Tulsa, for intervenor.

Lyons & Dean by Tony Jack Lyons, Pryor, amicus curiae.

HODGES, Vice Chief Justice.

The questions presented by this appeal are matters of first impression in this jurisdiction and concern the criteria for determining whether a loan is a "consumer loan," a "consumer related loan" or an "other loan" under the provisions of the Oklahoma version of the Uniform Consumer Credit Code ("UCCC"), 14A O.S. 1971 § 1–101 et seq., and a determination of the maximum permissible rate of interest that may be charged by a creditor under the laws of the State of Oklahoma for the type of loan presented by this case.

Anna Louise Helfenbein ("borrower") borrowed $500,000.00 from B. E. Barnes ("lender") on September 23, 1969. The lender had made infrequent small loans in the past, but the lender was an individual who was not regularly engaged in the business of making loans. The borrower had mortgaged the real property proposed as collateral for the loan on several occasions and had extinguished each prior mortgage loan by obtaining a subsequent mortgage loan. The borrower had no apparent source of funds to pay the mortgage loans, except through a sale or refinancing of the real property collateral. At the time the loan was made, the borrower's real property was subject to a $423,000.00 mortgage loan which was in default and in the process of foreclosure. Although the borrower had received offers to sell the real property which would have discharged her obligation and yielded a profit in excess of $300,000.00, the borrower refused the offers because they did not meet the borrower's expectation of the profit to be realized from the sale of the real property. Instead, the borrower sought a new mortgage loan to permit further speculation on land values.

The lender was contacted by a representative of the borrower who proposed the terms of the loan. The loan terms were explained to the borrower by her attorney before the loan closing. The borrower also received a letter from her attorney disclosing the terms of the loan, which was

signed and accepted by the borrower indicating her understanding and approval of the lending transaction.

At the loan closing, the borrower executed and delivered to the lender a written promissory note in the principal sum of $600,000.00 due on April 1, 1970, bearing interest at the rate of 38.502% per annum. The lender simultaneously delivered $600,000.00 to the borrower who immediately redelivered $100,000.00 to the lender as the agreed prepaid finance charge for the loan term. Payment of the loan was secured by a real estate mortgage covering land which was owned by the borrower and which was not used for homestead or agricultural purposes.

The borrower defaulted in payment of the note. The lender instituted an action for payment of the promissory note, foreclosure of the real estate mortgage, and attorney's fees in the amount of $90,000.00 as provided by the note.

After overruling the motion for summary judgment filed by the lender, at the pretrial conference, the trial court ruled that the loan was neither a "consumer loan" nor a "consumer related loan" under the applicable provisions of the UCCC and set the case for trial before an advisory jury on the question of unconscionability of the rate of interest. At the trial of the cause, the advisory jury found that the interest rate was unconscionable. The court accepted the jury's advisory opinion and reduced the interest rate on the loan to ten percent (10%) per annum.

The lender recovered a judgment against the borrower in the amount of $500,000.00 plus interest at the rate of ten percent (10%) per annum from the date of the note, attorney's fees in the amount of $50,000.00, court costs and a decree of foreclosure of the real estate mortgage securing payment of the note. The borrower obtained a judgment holding that the rate of interest provided in the note was unconscionable and reducing the rate of interest to ten percent (10%) per annum. The

trial court stated that the rate of interest had been reduced based on equitable principles and not under the applicable statutes.

Subsequent to the trial, the borrower discharged her counsel. He filed an attorney's lien of $75,000.00 against the proceeds of the mortgage foreclosure sale.

The borrower's real property was sold at the mortgage foreclosure sale on June 13, 1972, for $810,000.00. The lender received $697,000.00 in satisfaction of his judgment. The remaining sale proceeds of $113,000.00 are the subject of this appeal.

The primary questions presented for our determination are the nature of the loan involved and the maximum permissible rate of interest for loans falling into this category under the laws of the State of Oklahoma. The questions of whether the trial court's determination of unconscionability was proper and whether an attorney's fee may be recovered are secondary issues.

On September 17, 1968, the people of the State of Oklahoma amended art. 14, § 2 of the Oklahoma Constitution and granted the legislature the authority to fix maximum rates of interest. The amendment provides:

"The Legislature shall have authority to classify loans and lenders, license and regulate lenders, define interest and fix maximum rates of interest; provided, however, in the absence of legislation fixing maximum rates of interest, all contracts for a greater rate of interest than ten percent (10%) per annum shall be deemed usurious; provided, further, that in contracts where no rate of interest is agreed upon, the rate shall not exceed six percent (6%) per annum."

Subsequently, the Oklahoma legislature adopted a modified version of the Uniform Consumer Credit Code which became effective on July 1, 1969. The effect of the passage of the UCCC was to repeal all existing ceilings on interest rates for loans. Under the UCCC, loans are divided into three all encompassing categories: "consumer loans," "consumer related loans" and

loans other than consumer or consumer related loans, referred to as "other loans." The provisions of the UCCC reflect a complete legislative treatment which fixes the maximum rates of interest for all lending transactions in Oklahoma. The first proviso of the constitutional amendment fixing the maximum rate of interest in the absence of legislation is rendered inapplicable because of the enactment of the UCCC. Under the UCCC, absolute limits on maximum interest rates are imposed on loans which fall into either of the categories of "consumer loans" and "consumer related loans." The delineation of exact charges by the legislature was deemed appropriate in consumer lending transactions in the exercise of a legislative desire to regulate practices by lenders active in the areas of consumer finance where an individual borrower is without the bargaining power to adequately discover the interest rate being charged or bargain for charges which are reasonable under the circumstances. We need not concern ourselves with the varying maximum interest rates or allowable charges applicable to "consumer loans" or "consumer related loans" because we agree with the finding of the trial court that the loan in question is not a "consumer loan" or a "consumer related loan" but an "other loan."

■ The statutory standards to be utilized in determining whether a loan is a "consumer loan" are delineated by 14A O.S.1971 §§ 3–104, 3–105.[1] In order for this loan to be a "consumer loan," it must meet all of the criteria set forth in both these sections. Any other interpretation would frustrate the intent of the Commissioners on Uniform State Laws and the Oklahoma legislature, and place a category of loans within the definition of "consumer loans" that would be contrary to reason.[2]

■ To determine whether the instant loan is a "consumer loan," a determination must first be made as to whether the loan is excepted from the category of "consumer loans" by definition as a "loan primarily secured by an interest in land" under § 3–105. To be automatically exempted from the category of a "consumer loan" under § 3–105, the value of the collateral must be substantial in relation to the amount of the loan, and the loan finance charge must not exceed ten percent per annum. Here the value of the collateral was substantial, but the interest rate exceeded ten percent per annum. Therefore, the loan in question is not automatically excluded from the definition of "consumer loan" by virtue of § 3–105. To determine whether the instant loan is a "consumer loan," we must then apply the remaining criteria set forth by §

---

1. A consumer loan is defined by 14A O.S. 1971 § 3–104:

   "Except with respect to a loan primarily secured by an interest in land (Section 3–105), "consumer loan" is a loan made by a person regularly engaged in the business of making loans in which

   (1) the debtor is a person other than an organization;

   (2) the debt is incurred primarily for a personal, family, household or agricultural purpose;

   (3) either the debt is payable in installments or a loan finance charge is made; and

   (4) either the principal does not exceed Twenty-Five Thousand Dollars ($25,000.- 00) or the debt is secured by an interest in land."

   and 14A O.S.1971 § 3–105:

   "Unless the loan is made subject to this Act by agreement (Section 3–601), and ex-

cept as provided with respect to disclosure (Section 3–301) and debtors' remedies (Section 5–201), 'consumer loan' does not include a 'loan primarily secured by an interest in land,' if at the time the loan is made the value of this collateral is substantial in relation to the amount of the loan, and the loan finance charge does not exceed ten percent (10%) per year calculated according to the Actuarial Method on the unpaid balances of the principal on the assumption that the debt will be paid * * * before the end of the agreed term."

2. Baggett, "The Oklahoma Version of the Uniform Consumer Credit Code," Commentary to 14A O.S.A.1971 § 3–605, p. 264–297, 445; Meyers, "Real Estate Transactions, Rates and The Uniform Consumer Credit Code," 23 Okla.L.Rev. 263, 277 (1970).

3–104. The initial requirement of § 3–104 is not satisfied because the lender was not regularly engaged in the business of making loans. The loan also fails to satisfy the requirement that the debt be incurred for a personal, family, household or agricultural purpose. It is obvious that the loan was made in pursuit of the borrower's commercial ventures.

Section 3–105 is identical to the Uniform Consumer Credit Code. It is apparent from an analysis of the comment to the Model Act that the two sections are to be construed together to exclude the classic home mortgage from all provisions of the UCCC except those on disclosure and debtor's remedies. The Official Comment to § 3–105 of the Model Act states that the ten percent limitation was intended to include as "consumer loans" those loans made at high rates of interest which are best exemplified by the second mortgage small loan business, i. e., where the value of the real property is not substantial in relation to the amount of the loan.

■ A loan which does not satisfy the statutory requirements of a "consumer loan" may be made subject to the provisions of the UCCC by written agreement among the parties to the lending transaction pursuant to 14A O.S.1971 § 3–601.[3] Because the parties did not so agree and because the loan fails to meet the statutory requirements of 14A O.S.1971 § 3–104 and § 3–105, it is not a "consumer loan." ·

■ Another category of loans defined by the UCCC and made subject to most of its provisions is the "consumer related loan." This loan does not meet the descriptive criteria for a "consumer related loan" set forth in 14A O.S.1971 § 3–602 because the principal exceeds $25,000.00.[4]

■ Because the loan is neither a "consumer loan" nor a "consumer related loan," it falls into the category of "other loans." Pursuant to the authority granted by art. 14 § 2 of the Oklahoma constitution, the legislature by its enactment of 14A O.S. 1971 §§ 3–605 and 5–107(2) has established the maximum permissible rate of interest for all loans other than consumer loans and consumer related loans to be forty-five percent (45%) per annum calculated according to the actuarial method.[5] The ra-

---

3. Loans subject to the Act by agreement of the parties are determined by 14A O.S.1971 § 3–601:
 "The parties to a loan other than a consumer loan may agree in writing signed by the parties that the loan is subject to the provisions of this Act applying to consumer loans. If the parties so agree, the loan is a consumer loan for the purposes of this Act."

4. It is provided by 14A O.S.1971 § 3–602:
 "(1) A "consumer related loan" is a loan which is not subject to the provisions of this Act applying to consumer loans and in which the principal does not exceed Twenty-Five Thousand Dollars ($25,000.00), if
 (a) the debtor is a person other than an organization; or
 (b) the debt is secured primarily by a security interest in a one or two family dwelling occupied by a person related to the debtor.
 (2) With respect to a consumer related loan, including one made pursuant to a revolving loan account, the parties may contract for the payment of a loan finance charge not in excess of eighteen

percent (18%) per year calculated according to the Actuarial Method on the unpaid balances of the principal."

5. The applicable provisions of the UCCC are 14A O.S.1971 § 3–605:
 "With respect to a loan other than a consumer loan or a consumer related loan, the parties may contract for the payment by the debtor of any loan finance charge, not in excess of the rate of loan finance charge specified in Section 5–107(2)."
 and 14A O.S.1971 § 5–107(2):
 "If it is shown that an extension of credit was made at an annual rate exceeding forty-five percent (45%) calculated according to the Actuarial Method and that the creditor then had a reputation for the use or threat of use of violence or other criminal means to cause harm to the person, reputation, or property of any person to collect extensions of credit or to punish the nonrepayment thereof, there is prima facie evidence that the extension of credit was unenforceable under subsection (1), unless such rate was otherwise lawful under any provision or provisions of this Act."

tionale for this as stated in the Comment to Section 3–605 of the Model Act is that there is no need for usuary limitations in sophisticated business transactions.[6]

■ With respect to commercial lending transactions (i. e. those which were not "consumer loans" or "consumer related loans"), the legislature fixed a single maximum permissible rate thus allowing parties of equal bargaining position to contract freely for any interest rate which did not constitute an extortionate extension of credit. We therefore find that the maximum permissible rate of interest in Oklahoma for all loans other than "consumer loans" and "consumer related loans" is forty-five percent (45%) per annum calculated according to the actuarial method.

The trial court's reduction of the rate of interest to ten percent per annum based on an equitable basis after the advisory jury found the interest rate of 38.502% to be unconscionable was error.

The UCCC, 14A O.S.1971 § 5–108(1), even as it relates to a "consumer loan," provides that the issue of unconscionability is a matter for the court to determine as a matter of law, and not as a question of fact for the jury.[7] The court may refuse to enforce a "consumer loan" if it finds any clause in the agreement to be unconscionable. However, to avoid the possibility that some court might capriciously decide that some rates are too high or some conduct is not proper, there is a specific provision, 14A O.S.1971 § 5–108(3), that a charge or practice expressly permitted by the Code is not in itself unconscionable.[8]

Guidelines are set forth in the UCCC to assist the court in its determination of what type of misconduct might be considered unconscionable.[9] Sections 4–106 and 6–111(3), 14A O.S.1971 are helpful in establishing criteria of unconscionability.[10]

6. The official Comment to the Model Act states:
"This section applies to loans which are neither consumer loans nor consumer related loans. In this residual category of loans fall those made to organizations other than in some land transactions and those made to individuals which are over $25,000.00 in amount. In the belief that there is little place for usury limitations in sophisticated business transactions, this section follows those states which exempt loans to corporations from their usury laws and extends the exemption to other organizations as well. Placing arbitrary ceilings on the amount of interest which can be charged in larger business transactions may prevent persons engaged in high risk business ventures from obtaining needed capital loans. It is impossible to measure how much is too much interest with respect to large business transactions. If the limit is set so high as to provide adequately for speculative business ventures, the limit becomes virtually meaningless for most transactions. If it is set at a level close to the top of the range for most business transactions, it will preclude loans for extraordinary ventures. Hence, in this residual category the parties may contract for any loan finance charge they desire."
7. The UCCC, as it relates to unconscionability, 14A O.S.1971 § 5–108(1), provides:
"With respect to a consumer credit sale, consumer lease, or consumer loan, if the court

as a matter of law finds the agreement or any clause of the agreement to have been unconscionable at the time it was made the court may refuse to enforce the agreement, or it may enforce the remainder of the agreement without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."
This position is also supported by 1 Anderson, "Uniform Commercial Code," p. 407 § 2:302:22 (2nd ed. 1970); *County Asphalt, Inc. v. Lewis Welding & Eng. Corp.*, 444 F.2d 372 (2nd Cir. 1971); and The Oklahoma Code of Civil Procedure, 12 O.S.1971 § 556.
8. 14A O.S.1971 § 5–108(3) provides:
"For the purposes of this section, a charge or practice expressly permitted by this Act is not in itself unconscionable."
9. Malcolm, "The Uniform Consumer Credit Code," 25 Bus.Law. 937, 949 (April 1970).
10. Section 6–111(3)(a)–(e) enumerates factors which may be determinative of the issue of unconscionability:
"(a) belief by the creditor at the time consumer credit sales, consumer leases, or consumer loans are made that there was no reasonable probability of payment in full of the obligation by the debtor;
(b) in the case of consumer credit sales or consumer leases, knowledge by the seller

■■ The equitable concept of unconscionability is meaningful only within the context of otherwise defined factors of onerous inequality, deception and oppression. Unconscionability is directly related to fraud and deceit. An unconscionable contract is one which no person in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept on the other. The basic test of unconscionability of a contract is whether under the circumstances existing at the time of making of the contract, and in light of the general commercial background and commercial needs of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties. Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties, together with contractual terms which are unreasonably favorable to the other party.[11]

An excellent discussion of the concept is found in *Williams v. Walker-Thomas Furniture Co.*, 121 U.S.App.D.C. 315, 350 F.2d 445, 449–450 (1965).[12]

> or lessor at the time of the sale or lease of the inability of the buyer or lessee to receive substantial benefits from the property or services sold or leased;
>
> (c) in the case of consumer credit sales or consumer leases, gross disparity between the price of the property or services sold or leased and the value of the property or services measured by the price at which similar property or services are readily obtainable in credit transactions by like buyers or lessees;
>
> (d) the fact that the creditor contracted for or received separate charges for insurance with respect to consumer credit sales or consumer loans with the effect of making the sales or loans, considered as a whole, unconscionable; and
>
> (e) the fact that the respondent has knowingly taken advantage of the inability of the debtor reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors."

Other standards to be utilized in determining unconscionability are delineated in 14A O.S. 1971 § 4-106(1):

> "In applying the provisions of the Act on unconscionability (Sections 5-108 and 6-111) to a separate charge for insurance, consideration shall be given, among other factors, to
>
> (a) potential benefits to the debtor including the satisfaction of his obligations;
>
> (b) the creditor's need for the protection provided by the insurance; and
>
> (c) the relation between the amount and terms of credit granted and the insurance benefits provided."

11. See *F. N. Roberts Pest Control Co. v. McDonald*, 132 Ga.App. 257, 208 S.E.2d 13 (1974); *Hume v. United States*, 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889). *Division of Triple T. Service Inc. v. Mobil Oil Corp.*, 60 Misc.2d 720, 304 N.Y.S.2d 191, 201 (1969); *Block v. Ford Motor Credit Co.*, 286 A.2d 228, 233 (D.C.1972) citing *Henningsen v. Bloomfield Motors*, 32 N.J. 358, 161 A.2d 69 (1960).

12. *Williams v. Walker-Thomas Furniture Co.*, pp. 449–450, supra, states:

"Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction. In many cases, the meaningfulness of the choice is negated by a gross inequality of bargaining power. The manner in which the contract was entered is also relevant to this consideration. Did each party to the contract, considering his obvious education or lack of it, have a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print and minimized by deceptive sales practices? Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he has entered a one-sided bargain. But when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestion of his consent, was ever given to all the terms. In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld."

"In determining reasonableness or fairness, the primary concern must be with the terms of the contract considered in light of the circumstances existing when the contract was made.

The lender did not behave in an unconscionable manner. The borrower's representative sought him out to make the loan. The record is replete with references to the borrower's extensive business acumen: by her own admission, she is an astute businesswoman and very familiar with the land and its value; she had managed the real property in question since 1946 and had mortgaged it many times; the interest rate was explained to her verbally and in writing at least four times by her attorney; she also signed an acknowledgment that the loan was entered into as her independent judgment without pressure or undue influence. The borrower had other via'ble alternatives which she could have exercised: she could have sold the property for a substantial profit; she could have undergone foreclosure proceedings and retained the excess from the sale. Instead, the borrower elected to gamble on prospective land values.

 This loan was an "other loan" in which the parties were free to contract for any rate of interest as long as it did not exceed forty-five percent (45%) per annum. The parties in the exercise of their inherent contractual rights may make whatever bargain they desire. It is the duty of the court to enforce valid voluntary contracts. The court will not interfere with the contract of parties in the absence of fraud, duress, undue influence or mistake. Courts are concerned only with the legality of the contract. The fairness or unfairness, folly or wisdom, or inequality of contracts are questions exclusively within the rights of the parties to adjust at the time the contract is made. The courts have no authority to relieve parties of their solemn obligations assumed under contracts in the absence of fraud, duress, undue influence or mistake.[13]

The final issue to be decided is the right of the borrower's original attorney to recover an attorney's fee under 14A O.S.1971 § 5–202(8).[14] This section of the UCCC provides that the court may award reasonable attorney's fees incurred by the debtor in any case in which it is found that a lender has violated the UCCC. We find no violations of the UCCC by the lender and, therefore, the borrower's attorney is not entitled to recover attorney's fees from the lender under the UCCC.

REVERSED.

All Justices concur.

---

The test is not simple, nor can it be mechanically applied. The terms are to be considered 'in the light of the general commercial background and the commercial needs of the particular trade or case.' * * * the test being whether the terms are 'so extreme as to appear unconscionable according to the mores and business practices of the time and place.' We think this formulation correctly states the test to be applied in those cases where no meaningful choice was exercised upon entering the contract."

13. *State ex rel. Derryberry v. Kerr-McGee Corp.*, 516 P.2d 813, 820 (Okl.1973); *Finerty Investment v. Athey*, 89 Okl. 284, 215 P. 611 (1923); *Meadows v. Neal*, 73 Okl. 111, 174 P. 753 (1918).

14. The applicable statute, 14A O.S.1971 5–202(8) states:
"In any case in which it is found that a creditor has violated this Act, the court may award reasonable attorney fees incurred by the debtor."