702 P.2d 930

Paul E. LAWRANCE and Marcelle Lawrance, husband and wife, Plaintiffs-Respondents,

v.

ELMORE BEAN WAREHOUSE, INC., an Idaho corporation, Defendant-Appellant.

No. 15542.

Court of Appeals of Idaho.

July 9, 1985.

Larry C. Ashcraft, Ashcraft & Jordan, Mountain Home, for defendant-appellant.

James A. Schiller, Schiller & Schiller, Nampa, for plaintiffs-respondents.

SWANSTROM, Justice.

Appellant Elmore Bean Warehouse, Inc., had contracted to purchase pinto beans from a grower, Lawrance, at a fixed price. When the market price of the beans dropped dramatically below the contract price, Elmore attempted to avoid paying the agreed price for the beans on the grounds of "commercial impracticability." The grower sued in the magistrate division and recovered judgment for the balance due on the contract. Elmore appealed from the judgment to the district court, but was unsuccessful there. A second appeal was taken to this court. We agree with the two prior decisions holding that the doctrine of "commercial impracticability" is not an avenue by which Elmore can escape its contractual obligation. We affirm the order of the district court.

On May 14, 1981, a representative from Elmore Bean Warehouse (hereinafter referred to as Elmore) approached Lawrance about growing pinto bean seed. That day a written contract was entered into by the parties whereby Lawrance agreed to grow and sell to Elmore eighteen and a half acres of pinto beans and Elmore agreed in turn to pay $25 per hundredweight for the beans if they were of commercial quality. An additional $3 per hundredweight was to be paid when the pinto beans were certified and another $2 per hundredweight was to be added if Lawrance waited until February 15, 1982 for payment.

That fall Lawrance harvested and delivered 240 hundredweight "sacks" of beans. The beans were accepted by Elmore and remained in Elmore's possession. By the fall of 1981 the market price for pinto bean seed had dropped well below the contract price. In January, Elmore asked Lawrance if he would accept $18 per hundredweight for the pinto beans. Lawrance declined. The parties did agree orally to extend the time for payment until July 1, 1982. Elmore paid Lawrance $1,137.60, fifteen percent of the amount owing on the contract, but the remaining amount due on July 1, 1982 was not paid. Lawrance brought suit to collect the remaining eighty-five percent.

A trial before a magistrate was held. After hearing testimony, the magistrate held Elmore should be held accountable for the full contract price—$30 per hundredweight. The additional $3 was added because evidence showed there was an eighty percent chance the beans would have been certified and Elmore was found to have waited an unreasonable period of time to have them certified. The additional $2 was awarded because Elmore had failed to pay the contract by July 1, 1982. The magistrate also held that the decrease in the market price was foreseeable and a risk associated with the business; therefore, performance of the contract was not commercially impractical. The magistrate awarded Lawrance $6,062.40, the amount remaining on the contract with interest. Costs, disbursements and reasonable attorney fees, under I.C. § 12–120(2), were also awarded amounting to a total judgment of $8,113.14.

This judgment was upheld when Elmore appealed to the district court. Elmore now appeals the district court's decision upholding the magistrate's findings of fact and conclusions of law. The only issue raised in this appeal is whether the lower court erred in failing to rule that Elmore was entitled to relief from the terms of the contract because of commercial impracticability.

■ Elmore asserts that payment of $30 per hundredweight is commercially impractical because of the tremendous drop in the market price and the lack of a market for

pinto bean seeds. Commercial impracticability is defined in I.C. § 28–2–615. It provides:

> Except so far as a seller may have assumed a greater obligation and subject to the preceding section on substituted performance:
>
> (a) Delay in delivery or nondelivery in whole or in part by a seller who complies with paragraphs (b) and (c) is not a breach of his duty under a contract for sale *if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made* or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid. [Emphasis added.]

While this language expressly frees only sellers from their obligations, the last sentence of comment 9 to this section of the Idaho/Uniform Commercial Code states that in certain circumstances at least "the reason of the present section may well apply and entitle the buyer to the exemption." Therefore, the provisions are applicable to buyers as long as there is compliance with the statutory requirements. *Hancock Paper Co. v. Champion International Corp.*, 424 F.Supp. 285 (E.D.Pa. 1976). *See Northern Illinois Gas Co. v. Energy Cooperative, Inc.*, 122 Ill.App.3d 940, 78 Ill.Dec. 215, 461 N.E.2d 1049 (1984); *see also* J. WHITE & R. SUMMERS, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE § 3–9, at 128 (2d ed. 1980); Annot., 93 A.L.R.3d 584 § 7 (1979).

To prevail under I.C. § 28–2–615 a buyer must prove that his performance was made impracticable by "(1) the occurrence of a contingency; (2) the nonoccurrence of which was a *basic assumption* on which the contract was made; and (3) by which occurrence further performance has become commercially impracticable." *Missouri Public Service Company v. Peabody Coal Company*, 583 S.W.2d 721, 726 (Mo. Ct.App.1979); *cert. denied*, 444 U.S. 865,

100 S.Ct. 135, 62 L.Ed.2d 88 (1979) (emphasis original); J. WHITE & R. SUMMERS, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE § 3–9, at 129 (2d ed. 1980). Elmore must show the contract was based on the assumption that the price for pinto bean seed would not decline or that the market would not "dry up." Therefore, whether the nonoccurrence of that event was a basic contract assumption is a question of foreseeability. *See Northern Illinois Gas Company v. Energy Cooperative, Inc., supra.*

Shifting and changing market conditions appear to be the norm of the business world. Therefore, more often than not they are foreseeable. Comment 4 to I.C. § 28–2–615 sheds further light on that subject.

> *Increased cost alone does not excuse performance unless the rise in cost is due to some unforeseen contingency which alters the essential nature of the performance. Neither is a rise or a collapse in the market in itself a justification, for that is exactly the type of business risk which business contracts made at fixed prices are intended to cover.* But a severe shortage of raw materials or of supplies due to a contingency such as war, embargo, local crop failure, unforeseen shutdown of major sources of supply or the like, which either causes a marked increase in cost or altogether prevents the seller from securing supplies necessary to his performance, is within the contemplation of this section. [Citation omitted.] [Emphasis added.]

■ In the case before us, testimony showed that the market for the pinto bean seed was very favorable at planting time. However, for a variety of reasons, the market price decreased forty percent by the following January. A representative of Elmore admitted the reason he had contracted out for the production of the pinto beans was because "there was a chance of making a profit...." Furthermore, the contract contained no provision to protect him from such a drop in the market price. It

appears Elmore risked a change in the market price by signing to buy the beans at a fixed price. The language of comment 4 makes it incumbent upon Elmore to show it can operate only at a loss and that loss will be so severe and unreasonable that failure to excuse performance would result in a grave injustice. *Northern Illinois Gas Co. v. Energy Cooperative, Inc., supra; see Louisiana Power & Light Co. v. Allegheny Ludlum Industries, Inc.,* 517 F.Supp. 1319 (E.D.La.1981). Elmore asserted that if it were required to pay $30 per hundredweight it would be driven into bankruptcy. However, it has failed to furnish specific facts to support that assertion. Therefore, as a matter of law, Elmore was unable to show the decline in the price of pinto bean seed was not reasonably foreseeable.

Analyzing the problem under the common law of impracticality, we turn to § 261 of the RESTATEMENT (2d) OF CONTRACTS (1981). That section states:

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the nonoccurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged unless the language or the circumstances indicate the contrary.

Comment b, which discusses the meaning of basic assumption, refers to UCC § 2–615, codified as I.C. § 28–2–615 in Idaho.

Comment b also notes that mere market shifts or financial inability usually do not discharge one's performance. Therefore, the result under I.C. § 28–2–615 and § 261 of the RESTATEMENT (2d) OF CONTRACTS is the same: no relief for Elmore.

The tough stance we are taking in this case is in view of the fact that virtually all contracts which are based upon a fixed price could be subject to modification if a change in the market price would occur. Interpreting the law as appellant suggests would invite countless suits by speculators in the market as well as by persons merely disappointed in their bargains. Few contractual agreements would be secure. As stated in comment 4 to I.C. § 28–2–615, an increase or decrease in prices, even a radical change, is just the thing that fixed price contracts are designed to protect against.

Based upon the foregoing analysis, we affirm the district court's order upholding the magistrate. Costs, and attorney fees under I.C. § 12–120(2), are awarded to respondents.

WALTERS, C.J., and BURNETT, J., concur.