736 P.2d 460

Gerald DOUGHTY and Betty F. Doughty, husband and wife; and Ida-Gro, Inc., an Idaho corporation, Plaintiffs-Appellants,

v.

IDAHO FROZEN FOODS CORP., a Delaware Corporation, Defendant-Respondent.

No. 16531.

Court of Appeals of Idaho.

April 10, 1987.

Rehearing Denied May 27, 1987.

Petition for Review Denied July 22, 1987.

Lloyd J. Webb and Curtis Webb (argued), Webb, Burton, Carlson & Pedersen, Twin Falls, for plaintiffs-appellants.

Edward L. Benoit, Benoit, Alexander, Sinclair, Harwood & High, Twin Falls, for defendant-respondent.

WALTERS, Chief Judge.

This is an appeal in a declaratory judgment action to determine the enforceability of a contract to purchase potatoes. Gerald Doughty, a farmer, contracted to sell a portion of his anticipated potato crop to Idaho Frozen Foods (IFF), a processor of potato products.[1] However, Doughty's crop later produced smaller than expected potatoes, resulting in a lower price under the terms of the contract. Doughty then sought a declaratory judgment that the contract was unenforceable. The district court ruled for IFF, holding the contract was enforceable. Doughty appeals, asserting that the contract was unenforceable because of a lack of mutual obligation and because the contract was unconscionable. We disagree. We affirm the judgment of the district court.

The facts in this case are undisputed. In 1983 Doughty contracted to sell a portion of his anticipated potato crop to IFF in order to secure financing for the growing

1. The other plaintiff named in this action, Ida-Grow, Inc., is a land owner who leased land to Doughty to grow potatoes. Ida-Grow was to receive a portion of the crop and was a signator along with Doughty to the contract to sell potatoes to IFF.

of the crop. To express the terms of their agreement, the parties utilized a "form" contract that had been developed through negotiations between IFF and the Potato Growers of Idaho (PGI).[2] Under the contract, Doughty was to receive a base price if the potato crop contained a certain percentage of potatoes weighing ten ounces or more. If the crop contained a higher percentage, the price would be increased. Conversely, if the crop contained a lesser percentage of ten-ounce potatoes, the price would be reduced. These provisions in the contract reflected IFF's desire for a certain size potato to meet its processing needs. The contract also provided IFF with the option to refuse or accept delivery of the potatoes if they contained less than ten percent ten-ounce or larger potatoes. Doughty had no such option.

Doughty contracted to sell only a portion of his crop to IFF. The potatoes that Doughty did not sell to IFF, he sold to another processor or on the "fresh pack" market. In the "fresh pack" market, potatoes are packaged in sacks and containers and sold for whole use, such as baking potatoes, without any processing. In the "fresh pack" market, a preharvest contract is not used. The potatoes are sold after harvest.

Doughty, an efficient and progressive farmer, used the most advanced techniques to produce a crop that would best meet his contractual obligations with IFF and the other processor, as well as the "fresh pack" market. Unfortunately, unexpected weather conditions cut short Doughty's efforts, and his potato crop consisted of only eight percent ten-ounce potatoes. Because of the small percentage of ten-ounce potatoes, Doughty was entitled to only $2.57 per hundredweight for his potatoes under the terms of the IFF contract. While too small for the IFF contract, the potatoes did meet the requirements under the other processing contract and for the "fresh pack" market. After four days of delivery under the IFF contract, Doughty refused to deliver any more potatoes to IFF. Doughty

sought a declaratory judgment that the contract was not enforceable. Pursuant to a stipulated agreement, Doughty then sold the remaining potatoes in the "fresh pack" market for $4.69 per hundredweight. The proceeds were placed in a court-controlled bank account pending resolution of this case. On appeal, Doughty renews his challenge to the enforceability of the contract on two grounds: first, that the contract is void for being unconscionable, and second, that the contract is void for lack of mutual obligation. We discuss each theory in turn.

## I

### Is the Contract Unconscionable?

Doughty argues that the contract is unconscionable because the terms were disproportionately skewed in favor of IFF. Specifically, Doughty invites a comparison of the built-in step decreases in the contract price based on the percentage of smaller potatoes and the step increases in price for higher percentages of larger potatoes. Doughty contends the contract is unconscionable because the price decreases are steeper than the price increases. Doughty also contends that it was unconscionable for IFF to have the option not to accept the potatoes if they consisted of less than ten percent ten-ounce or larger size potatoes.

In *Hershey v. Simpson*, 111 Idaho 491, 725 P.2d 196 (Ct.App.1986), this Court recognized that a claim of unconscionability may have procedural and substantive aspects. We stated that procedural unconscionability may arise in the bargaining process leading to an agreement. Procedural unconscionability "is characterized by great disparity in the bargaining positions of the parties, by extreme need of one party to reach some agreement (however unfavorable), or by threats short of duress. These circumstances taint the bargaining process, producing a result that does not reflect free market forces." 111 Idaho at 493–94, 725 P.2d at 198–99. Regarding substantive unconscionability, we stated that "[o]nly in special circumstances may a

2. PGI is an independent bargaining organization which represented approximately twelve hundred potato growers. Doughty was not a member of the PGI.

court of equity set aside contracts fairly and freely negotiated." 111 Idaho at 494, 725 P.2d at 199. We further noted that such "special circumstances" turn on "whether at the time of making of the contract, and in light of the general commercial background and commercial needs of a particular case, [the contract is] so one-sided as to oppress or unfairly surprise one of the parties." *Id.*, quoting from *Barnes v. Helfenbein,* 548 P.2d 1014 (Okla. 1976).

■ Doughty's allegations encompass aspects of both procedural and substantive unconscionability. Under either aspect, we do not find the contract to be unconscionable. Although Doughty was not a member of PGI, the group which negotiated the contract with IFF, PGI represented a significant number of growers. Doughty has not shown that he was in any way different from those potato growers who were members of PGI. Moreover, the record clearly establishes that PGI did have substantial bargaining power and negotiating expertise. The contract was generally negotiated over a period of time with both PGI and IFF, attempting to meet their needs. Testimony by IFF's buyer indicated that one year a PGI-approved contract was not used because the two sides could not agree on terms. That, at the least, indicates that PGI did have substantial negotiating strength.

Doughty entered into the contract freely and sought the benefits which the collective bargaining power of PGI had obtained. Apparently, Doughty was not dissatisfied with the contract *until* his crop produced small potatoes. There is no indication that Doughty tried or wanted to negotiate different terms under the contract. In fact, the contract would appear to be to the advantage of a farmer such as Doughty— one who through innovation, skill, and aggressiveness sought to produce a crop that would fulfill not only the IFF contract, but also his other processing contract, plus produce potatoes for the "fresh pack" market. Had Doughty's efforts produced the ten-ounce potatoes he sought, Doughty would have had a very beneficial contract. There was no indication that Doughty was forced by "extreme need" into the contract. Although Doughty's bank required a contract in order to provide the financing to grow the potatoes, that requirement does not indicate extreme need. For instance, Doughty might have avoided any use of the IFF contract by simply contracting with the other processor who bought portions of Doughty's crop on terms different from the IFF contract. Finally, there is no indication from the record of any threats to Doughty that caused him to enter into the IFF contract.

■ The contract also does not reflect any substantively unconscionable aspects. The prices were based on the size and quality of potatoes that IFF desired and that Doughty hoped he could produce. The pricing variations, as well as the option to refuse potatoes not meeting the contract requirements, do not appear to be unreasonable considering the product the contract was intended to produce—ten-ounce or larger potatoes. The contract was a preharvest contract. Therefore Doughty could attempt to manipulate and manage the crop to produce exactly the size potatoes that would be most financially rewarding. Doughty was thwarted by unexpected weather conditions. Doughty's assertions reflect an attempt to reap the benefits that the contract would have produced if he had grown the kind of potatoes he intended to, yet escape the negative aspects resulting from his inability to produce that type of potato. The contract simply does not appear to be "so one-sided as to oppress or unfairly surprise one of the parties."

Each party accepted certain risks by signing the preharvest contract. IFF took a chance that market prices might decline, while Doughty took a chance on growing a certain size potato. *See Lawrance v. Elmore Bean Warehouse, Inc.,* 108 Idaho 892, 702 P.2d 930 (Ct.App.1985). IFF did have an option to reject potatoes that did not meet IFF's size criteria. However, contracts do not necessarily give identical rights to all parties. That is part of the bargaining process. It does not necessarily make a contract unconscionable. We

conclude that the contract was not unconscionable in this case.

## II

## Is the Contract Void Because of a Lack of Mutuality of Obligation?

Doughty's argument on this issue is closely related to his argument on unconscionability. In short, he contends that the contract lacked mutuality of obligation because it allowed IFF the option to reject delivery of the potatoes under certain conditions, yet did not permit Doughty the same option. Thus Doughty asserts that IFF's obligations under the contract were illusory. This assertion fails to comprehend what "mutuality of obligation" is and how it applies to this contract.

■ "Mutuality of obligation" is simply another way of expressing the idea that there must be adequate consideration in the formation of a contract. 1 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 105A (3rd ed. 1957); J. CALAMARI AND J. PERILLO, THE LAW OF CONTRACTS, § 4–14 (2nd ed. 1977); RESTATEMENT (SECOND) OF CONTRACTS § 79 (1981). The term does not mean that the promises by parties in a contract must be coextensive. *Keck v. Brookfield*, 2 Ariz.App. 424, 409 P.2d 583 (1965). Nor does the consideration by each party have to be of like or identical value. *Carroll v. Lee*, 148 Ariz. 10, 712 P.2d 923 (1986). Likewise, each written term of a contract does not have to be separately bargained for. *Millican of Washington, Inc. v. Wienker Carpet Service, Inc.*, 44 Wash.App. 409, 722 P.2d 861 (1986).

Noting that use of the term "mutuality of obligation" has been criticized for the confusion it has generated, we find the following explanation informative.

> Sometimes the question involved where mutuality is discussed is whether one party to the transaction can be fair implication be regarded as making any promise; but this is simply an inquiry whether there is consideration for the other party's promise. The particular difficulty resulting from the use of the word "mu-

tuality" as a requirement for the formation of contract, lies in the fact that some cases hold a contract invalid because the obligation undertaken on one side is not commensurate with that undertaken on the other.

> Confusion has resulted most frequently where one party is given an option, not accorded to the other, of discontinuing or extending performance or of cancelling or renewing the contract or of determining the extent of performance. If the option goes so far as to render illusory the promise of the party given the option, there is indeed no sufficient consideration, and therefore no contract, but the mere fact that the option prevents the mutual promises from being coextensive does not prevent both promises from being binding according to their respective terms. A court of equity might indeed refuse to enforce specifically such a contract if it seemed oppressive, but to deny its legal validity is to contradict directly the numerous cases which hold adequacy of consideration a matter exclusively for the decision of the parties. The large class of cases where one party to a contract may reject performance which is not satisfactory to him, or to his architect or engineer, while no corresponding privilege is given to the other party, is itself enough to establish what should need no argument, that the obligations of the parties to a contract need not be substantially equal. . . .

WILLISTON § 105A at 423–27.

■ Thus the real question presented here was whether there was genuine, rather than "illusory," consideration given by IFF. Doughty contends that there was no consideration because he did not have a coextensive right to escape his contractual obligations. We disagree. In essence, this was a contract to grow ten-ounce or larger potatoes. Since IFF wanted a particular size potato, as part of the contract it specified that a certain percentage of the crop must be that size or larger. If less than ten percent of the potatoes were the desired size, IFF would have the option to not accept them. It was not necessary that Doughty have a similar right to escape his

obligations if there was less than ten percent ten-ounce potatoes. IFF did not have unfettered discretion to accept or refuse the potatoes. If Doughty's potatoes met the conditions specified in the contract (the size of which was one of several requirements), then IFF was obligated to pay for those potatoes. Doughty's contention that IFF's obligation was illusory is without merit. Thus, we conclude that the contract is not void for lack of mutuality of obligation.

We conclude that there was consideration on IFF's part, and that the contract was not unconscionable. The judgment of the district court is therefore affirmed. Costs to respondents, Idaho Frozen Foods. No attorney fees having been requested on appeal, none will be awarded.

BURNETT and SWANSTROM, JJ., concur.