Ralph and Karla COBLENTZ, Appellants,

v.

OKLAHOMA FARM BUREAU MUTUAL
INSURANCE COMPANY, Appellee.

No. 85529.

Court of Appeals of Oklahoma,
Division No. 2.

Oct. 17, 1995.

Certiorari Denied Feb. 22, 1996.

Lawrence A.G. Johnson, Johnson & Swenson, Tulsa, for Appellants.

Donald B. Bolt, Roger Williams, Williams & Bolt, P.A., Tulsa, for Appellee.

BOUDREAU, Judge.

■ Plaintiffs, Ralph and Karla Coblentz, appeal an order granting summary judgment to Defendant, Oklahoma Farm Bureau Mutual Insurance Company (Insurer). In this contract action, the issue on appeal is whether the homeowner's policy provision limiting Insurer's liability to actual cash value of the property, unless replacement has been made, is void as unconscionable. We hold that it is and reverse the judgment for Insurer.

Plaintiffs purchased homeowner's insurance from Insurer. Plaintiffs paid Insurer an additional premium for a personal-property, replacement-cost endorsement to their homeowner's policy. The replacement-cost endorsement affixed to Plaintiffs' policy indicated that Insurer would pay the actual cost of repair or replacement, rather than the depreciated value of that which was damaged, but only if Plaintiffs actually repaired or replaced the personal property. Specifically, the endorsement provided:

> If the replacement cost of the entire loss under this section is greater than $500, *WE will not be liable for full replacement cost until actual repair or replacement is completed.* (Emphasis added).

Plaintiffs' house and outbuildings were struck by a tornado, causing damage to and loss of personal property. Plaintiffs filed a claim with Insurer under their homeowner's policy. Plaintiffs were unable to replace the majority of the personal property that was destroyed because they did not have the

money to do so. Accordingly, Insurer paid the Plaintiffs $16,855.18, the actual cash value of their destroyed or damaged personal property.

Plaintiffs sued Insurer, claiming a total loss of $36,683.88 based on the replacement value of the destroyed or damaged personal property. Insurer defended, claiming that Plaintiffs did not meet the condition precedent set out in the policy of insurance which required Plaintiffs to actually repair or replace the property before Insurer would become liable to pay replacement value. Plaintiffs countered that the condition precedent in the insurance contract violates Oklahoma's public policy.

■ The material facts that comprise this controversy are not in dispute. The question presented is one of law. Contested issues of law are reviewable in all actions, suits, and proceedings by a de novo standard. *Weeks v. Cessna Aircraft Co.*, 895 P.2d 731, 732 (Okla.Ct.App.1994). Review of law is called "de novo," which means no deference, not necessarily a full rehearing or new fact-finding. *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

■ The general nature of the relation between an insurer and its insured is purely contractual. *Silver v. Slusher*, 770 P.2d 878, 883 (Okla.1989). In reviewing contracts, courts are concerned only with their legality and not their wisdom or fairness. *Barnes v. Helfenbein*, 548 P.2d 1014, 1021 (Okla.1976). It is the duty of the court to enforce valid, voluntary contracts absent fraud, duress, undue influence, or mistake. *Id.*

■ The equitable concept of unconscionability is directly related to fraud and deceit. *Id.* at 1020. "An unconscionable contract is one which no person in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept on the other." *Id.* In other jurisdictions, it has been held as a matter of common law that unconscionable contracts are not enforceable. *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 448 (D.C.Cir. 1965).

Unconscionability has generally been recognized to include: (1) an absence of meaningful choice on the part of one of the parties, and (2) contractual terms which are unreasonably favorable to the other party. *Barnes,* 548 P.2d at 1020. With regard to the first prong of this test, an insurance contract, by its very nature, is an adhesion contract. *Rodgers v. Tecumseh Bank,* 756 P.2d 1223, 1226 (Okla.1988). An adhesion contract is defined as follows:

> "The term [adhesion contract] refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a 'take it or leave it' basis, without opportunity for bargaining and under such conditions that the 'adherer' cannot obtain the desired product or service save by acquiescing in the form agreement."

*Id.* (quoting *Steven v. Fidelity & Cas. Co. of New York,* 58 Cal.2d 862, 27 Cal.Rptr. 172, 185, 377 P.2d 284, 297 (1963)). The definitive characteristic of an adhesion contract is the weaker party's lack of a realistic choice as to its terms. *Id.* Such is the case here.

The second prong of the test requires a showing that the challenged provision unreasonably favors the stronger party, in this case, Insurer. We find that it does. Insurer required Plaintiffs to pay an extra premium to obtain replacement-value coverage. Insurer then, by the terms of its insurance policy, required Plaintiffs to replace their lost property before Insurer would become obligated to pay full replacement cost. Insurer, by means of this condition precedent, placed Plaintiffs, who lacked the financial wherewithal to replace the property, in a legal "Catch 22." Because Plaintiffs lacked the resources to provide for the loss (which was the purpose of their insurance contract), Insurer was able to compel them to accept the lower actual cash value of the property instead of the full replacement value coverage they expected and for which they paid.

This provision is offensive for yet another reason. In order to obtain replacement value under the terms of the contract, Insurer requires Plaintiffs to expend replacement funds without any assurance that they will be reimbursed. For instance, even if Plaintiffs were to replace the property, Insurer might still deny payment, contending that the replacement property procured was not a similar item of like kind and quality as required by the policy or that the property was not covered by the terms of the policy. In that situation, Plaintiffs would be required to expend large sums of money and then still be compelled to seek a judicial determination holding Insurer liable.

In conclusion, we find the replacement requirement contained in the policy unconscionable under the teachings of *Barnes.* We reverse the judgment in favor of Insurer and remand the case to the trial court for further proceedings on the contract claim.

Given that the issue on appeal presented a question of first impression, we conclude that Insurer's withholding of full replacement value under the policy did not amount to unreasonable bad faith conduct that would justify a finding of liability under the tort of bad faith. *See McCorkle v. Great Atlantic Ins. Co.,* 637 P.2d 583 (Okla.1981).

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

TAYLOR, P.J., and REIF, J., concur.