FILED
United States Court of Appeals
Tenth Circuit

February 21, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FRANCINE MARTIN; JEFFREY A.
MARTIN, and all other similarly situated,

    Plaintiffs - Appellants,

v.

UNITED AIRLINES, INC.,

    Defendant - Appellee.

No. 17-6112
(D.C. No. 5:16-CV-01042-F)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ**, and **HOLMES**, Circuit Judges.
_____

Plaintiffs Francine and Jeffrey Martin brought a putative class action against

United Airlines for not fully refunding the price of nonrefundable airline tickets they had

purchased. The United States District Court for the Western District of Oklahoma

dismissed their complaint, ruling that some claims were preempted by the Airline

Deregulation Act of 1978 (ADA), 49 U.S.C. § 41713(b)(1), and that the remaining claims

failed to state a claim under Oklahoma law. Plaintiffs appeal. We have jurisdiction

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously
that oral argument would not materially assist in the determination of this appeal. *See*
Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted
without oral argument. This order and judgment is not binding precedent, except under
the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R.
32.1.

under 28 U.S.C. § 1291 and affirm.  We need not address preemption because the claims pursued by Plaintiffs on appeal are not supported by Oklahoma law.  United did nothing more than enforce an enforceable contract.

## I.    BACKGROUND

Plaintiffs' First Amended Class Action Petition (the Complaint), the operative complaint in this case, alleges the following:  Plaintiffs are Oklahoma residents who purchased several nonrefundable tickets from United.  When they were not able to take the trips and canceled their bookings, United did not refund the value of the tickets.  United did allow them to use what they had paid for the fare (but not the extra charges for better seats) to book substitute flights, but only on condition that they book the new flights within one year, pay an additional "change fee" for each new flight, and call United to book their flights.  Plaintiffs were able to book one substitute flight for Mr. Martin on these terms.  But an attempt to book other flights failed when Mr. Martin became frustrated with the English proficiency of the airline's customer-service representatives and could not obtain an extension of the one-year deadline either online or by email.

United's contract of carriage, which Plaintiffs admittedly entered into by purchasing their tickets, governs United's obligations towards its customers.  It states that United "will not refund any portion of a Ticket that is purchased with a non-refundable fare," Aplt. App., Vol. I at 198,[1] and "[n]onrefundable fares have no value after ticketed

_____

[1]  The contract's "Refunds" section states:

departure time," *id.* at 170.[2] United does, however, recognize an "Exception," which permits a passenger to book a new flight, for a one-year period, with the value of the cancelled ticket (subject to applicable change fees). *Id.*

---

E) Non-refundable Tickets:
1) General Rule - Except as provided in Rules 4 and 27 C), UA *will not refund any portion of a Ticket that is purchased with a non-refundable fare*, including the fare and any taxes, fees, or other charges included within the total price paid for the Ticket.

2) Application of Unused Ticket toward Future Ticket Purchase - UA may allow a portion of the non-refundable fare paid for an unused and unexpired non-refundable UA Ticket to be applied towards the purchase of future travel on UA, provided it is done in accordance with the applicable fare rule in place at the time of such request. Change fees and other administrative charges may apply. Any portion not so applied will not be refunded in any form.

Aplt. App., Vol. I at 198 (emphasis added). Rule 4 concerns United's reservations policy, *see id.* at 167, and Rule 27 C) concerns refunds for baggage and booking service charges and upgrade fees, *see id.* at 198. Plaintiffs' appellate briefs do not mention either rule, nor are they relevant to their claims on appeal.

[2] Part A of the contract's "Ticket Validity Period" states:

Period of Validity - Except as otherwise provided in this Rule or required by the applicable local law of a foreign jurisdiction, any eligible Ticket issued by UA or its authorized agent on UA Ticket Stock will be valid for transportation for one year from the date on which transportation commences at the point of origin as designated on the original Ticket or, if no portion of the Ticket is used, one year from the date of issuance of the original or reissued Ticket, whichever is later. When an unused published fare Ticket is completely reissued, the new Ticket validity on the reissued Ticket will be determined from the date the Ticket was reissued. When a Ticket includes an excursion or special fare having a shorter period of validity than one year, the shorter period of validity will apply only to the excursion or special fare transportation. When a fare limits the carriage to specific periods of the day, week, month, or year, the Ticket is valid for the specified periods only. When fares are combined to create

3

Plaintiffs filed a complaint in Oklahoma state court, alleging four claims under Oklahoma law: (1) breach of contract by "failure of consideration"; (2) breach of contract by failure to fulfill "reasonable expectations"; (3) "recovery of money wrongfully kept by [United]"; and (4) tortious breach of the implied covenant of good faith and fair dealing. Following removal to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d), United moved to dismiss the complaint with prejudice on two grounds. First, it contended that the claims were preempted by the ADA, which states that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b); *see Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1429 (2014) ("[S]tate common-law rules fall comfortably within the language of the ADA pre-emption provision."). Second, it contended that the complaint failed to state a claim under Oklahoma law. The district court said that it was undisputed that Plaintiffs' claims "relate[d] to [United's] prices and services." Aplt. App., Vol. II at 329. And it held that insofar as Plaintiffs' theories of relief attempted to impose state-law standards to

Round/Circle/Open-Jaw Trips, the most restrictive provisions will apply to the entire transportation.

NOTE: *Nonrefundable fares have no value after ticketed departure time.*

EXCEPTION: *When the Passenger cancels the ticketed flight reservations prior to the ticketed departure time, the ticket will be valid for transportation for one year from the date of issuance of the original ticket and will be subject to any and all applicable change fees.* Otherwise, the ticket has no value after ticketed departure time.

*Id.* at 170 (emphasis added).

4

which the parties had not agreed, they were preempted. *See Ginsberg*, 134 S. Ct. at 1426 ("[A] claim is pre-empted [by the ADA] if it seeks to enlarge the contractual obligations that the parties voluntarily adopt."); *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995) ("[T]he ADA's preemption prescription bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves."). It then held that the remaining claims failed on the merits. It therefore dismissed the complaint with prejudice.

On appeal Plaintiffs concede that their fourth claim (a tort claim, rather than a contract claim, based on an alleged breach of the covenant of good faith) is preempted by the ADA. And although their reply brief contends that they have not conceded preemption of their third claim (recovery of money wrongfully kept by United), they have waived any challenge to the dismissal of that claim because their opening brief presents no argument on the issue. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."). Thus, only their two breach-of-contract claims remain. Although the parties' briefs devote most of their attention to the preemption issue, we need not address it. Plaintiffs acknowledge on appeal that one of the issues before us is "whether their claims . . . fail on their merits." Aplt. Br. at 6. And we can readily hold, at least on the arguments made by Plaintiffs on appeal, that the preserved claims fail under Oklahoma law.

## II. DISCUSSION

"We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under Oklahoma law we construe a contract according to the plain meaning of its language "unless some technical term is used in a manner intended to convey a specific technical concept." *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 546 (Okla. 2003) (following Okla. Stat. tit. 15, § 160 (1993)). If the contract is unambiguous, the court interprets it as a matter of law, *id.* at 545, because the contract itself is then the "only legitimate evidence of what the parties intended," *id*. at 546.

There can be no dispute that United acted in accordance with the express terms of the contract of carriage. Although Plaintiffs' opening brief contains a section headed "Ambiguous Language to be Construed Against Drafter," Aplt. Br. at 29, the brief wholly fails to point to any language—any word, phrase, or sentence—in the contract of carriage that "is reasonably susceptible to at least two different constructions," *id.* (defining *ambiguous*). The closest it comes is in the following passage:

> [I]mmediately at the time the contract is entered in to an ambiguity exists. On one hand, [United] will provide transportation to Plaintiffs in exchange for the money they paid. On the other hand, [United] will not

6

> provide transportation to Plaintiffs in exchange for the money they paid for but gets to keep the money anyway.  What then, is the parties' agreement?

Aplt. Br. at 49.  But, tellingly and fatally, this argument still does not point to, much less quote, specific language in the contract.  Thus, Plaintiffs have not preserved an ambiguity argument on appeal.  *See Bronson*, 500 F.3d at 1104.

In any event, we see no ambiguity.  The clear terms, which need not be requoted, provide that when a passenger does not take a flight, he or she can use the price of the ticket only toward a flight within one year, after paying the applicable change fee.  Plaintiffs concede that they were able to take advantage of this opportunity with respect to one ticket, and they do not claim that United refused to provide the same opportunity with respect to their other tickets.

What Plaintiffs are in essence attempting to do is change the terms of the contract.  First, they invoke the reasonable-expectations doctrine to assert that they expected better terms with a nonrefundable ticket.  *See Am. Econ. Ins. Co. v. Bogdahn*, 89 P.3d 1051, 1054 (Okla. 2004) (the doctrine requires court to interpret insurance policy to mean what a "reasonable person in the position of the insured would have understood it to mean").  But the Oklahoma courts apply the doctrine only if the contract is ambiguous or if a term is "masked by technical or obscure language or hidden in a policy's provisions."  *Bogdahn*, 89 P.3d at 1054 (internal quotation marks omitted).  As we have already said, United's contract is not ambiguous.  Nor is the nonrefundability of a "nonrefundable" ticket masked by technical or obscure language.  And if anything is hidden in the contract's provisions, it is the language providing some refundability.  No one buying a

7

nonrefundable ticket could have any illusions that he or she could miss the flight and get a full refund.

Plaintiffs also contend that the restrictions on refunding the cost of a nonrefundable ticket violate the implied covenant of good faith and fair dealing. But that covenant cannot impose terms that contravene the express terms of the contract. *See Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 532 (Okla. 1985) (there was no implied covenant in landlord-tenant contract that comprehensively set forth relationship between landlord and tenant); *United Assocs., Inc. v. Wal-Mart Stores, Inc.*, 133 F.3d 1296, 1298 (10th Cir. 1997) ("Oklahoma courts refuse to rewrite a lease by applying a covenant that is contrary to the express terms for which the parties have bargained."). What Plaintiffs are complaining about are the express terms of United's contract of carriage. The implied covenant of good faith and fair dealing can afford them no relief from those terms.

Finally, Plaintiffs argue that the restrictions on nonrefundable tickets are unconscionable. We are not persuaded. Under Oklahoma law, "[a]n unconscionable contract is one which no person in his senses, not under delusion would make, on the one hand, and which no fair and honest [person] would accept on the other." *Barnes v. Helfennbein*, 548 P.2d 1014, 1020 (Okla. 1976). "The basic test of unconscionability of a contract is whether under the circumstances existing at the time of making of the contract, and in light of the general commercial background and commercial needs of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties." *Id.* Unconscionability requires an "absence of meaningful choice" and

8

"contractual terms which are unreasonably favorable to the other party." *Id.* Those requirements are not satisfied here. Every day, thousands of travelers have a choice between purchasing a refundable ticket or a significantly cheaper nonrefundable ticket from a variety of airlines. Few are out of their senses or delusional. Contracts made on competitive markets are seldom unconscionable. Although the market for air travel is not a model of perfect competition, the commercial context here also argues against finding unconscionability. Airlines can compete against each other, and an airline could certainly obtain a competitive advantage in obtaining customers by making all tickets fully refundable or, as some do, by reducing the burden of exchanging the ticket, but the cost to an airline of doing so may constrain such an effort.[3] Further, there is certainly no procedural unfairness present here. Airlines are hardly oppressive or coercive in offering travelers the choice of cheaper nonrefundable tickets. And we see nothing morally

---

[3] The Supreme Court has described the market conditions as follows:

> The expenses involved in operating an airline flight are almost entirely fixed costs; they increase very little with each additional passenger. The market for these flights is divided between consumers whose volume of purchases is relatively insensitive to price (primarily business travelers) and consumers whose demand is very price sensitive indeed (primarily pleasure travelers). Accordingly, airlines try to sell as many seats per flight as possible at higher prices to the first group, and then to fill up the flight by selling seats at much lower prices to the second group (since almost all the costs are fixed, even a passenger paying far below average cost is preferable to an empty seat). In order for this marketing process to work, and for it ultimately to redound to the benefit of price-conscious travelers, the airlines must be able to place substantial restrictions on the availability of the lower priced seats (so as to sell as many seats as possible at the higher rate), and must be able to advertise the lower fares.

*Morales v. Trans World Airlines*, *Inc*., 504 U.S. 374, 389 (1992). This is a description of a properly functioning market, not unconscionable practices.

reprehensible or exploitive in the ultimate contract—a contract that is pervasive in modern society. In short, the terms of United's nonrefundable tickets do not confront travelers with an absence of choice or unfair surprise and are not oppressively one-sided in light of commercial realities.

Because Plaintiffs were bound by the conditions imposed by the contract of carriage on nonrefundable tickets, their breach-of-contract claims must fail.

## III. CONCLUSION

We **AFFIRM** the district court's judgment.

Entered for the Court

Harris L Hartz
Circuit Judge