Andrew T. DALTON, Jr., for himself and
for all others like and similarly
situated, Appellant,

v.

The CITY OF TULSA, Oklahoma, a
Municipal Corporation, Appellee.

No. 48301.

Supreme Court of Oklahoma.

Feb. 8, 1977.

Rehearing Denied March 15, 1977.

Andrew T. Dalton, Jr., Tulsa, for appellant.

Imogene H. Harris, Asst. City Atty., Tulsa, and R. James Unruh, Sp. Atty., for the Utility Bd. of City of Tulsa, Tulsa, for appellee.

DAVISON, Justice:

On behalf of himself, and all others like and similarly situated, appellant, Andrew T. Dalton, brought an action against the City

of Tulsa, alleging that the City, who sold water to its residents, violated provisions of the Uniform Consumer Credit Code, as enacted in Oklahoma,[1] as the City did not properly disclose a 5% "penalty," which was added to customer's water bills, when not paid on time.

Appellant also alleged that patron's constitutional right to procedural due process was violated by the City because proper notice and an opportunity to respond is not provided prior to the termination of water services for nonpayment.

The case was submitted to a trial judge of the District Court of Tulsa County, on a set of stipulated facts. After both parties moved for summary judgment, the trial court granted summary judgment to the City of Tulsa. Appellant appeals from the granting of the summary judgment.

I

The first question raised is whether the provisions of the Consumer Credit Code are applicable to the fact situation before us.

Section 1-202 of the Act, which enumerates transactions excluded from the Act provides:

"This Act does not apply to

(1) *  *  *

(2) *  *  *

(3) transactions under public utility or common carrier tariffs if a subdivision or agency of this State or of the United States regulates the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment; *  *  *."

The provisions of the Consumer Credit Code are supplemented by regulations promulgated by the Administrator of the Code, the Administrator of the Department of Consumer Affairs. See 14A O.S.1971, §§ 6–103 and 6–501 through 6–510.

In any state enacting the Uniform Consumer Credit Code, the Administrator has a mandatory statutory obligation to adopt rules not inconsistent with the Federal Consumer Protection Act.[2] This mandatory duty imposed upon the Administrator is set forth at 14A O.S.1971 § 6–104(2), which provides:

"The Administrator shall adopt rules not inconsistent with the Federal Consumer Credit Protection Act to assure a meaningful disclosure of credit terms so that a prospective debtor will be able to compare more readily the various credit terms available to him and to avoid the uninformed use of credit. *These rules may supersede any provisions of this Act* which are inconsistent with the Federal Consumer Credit Protection Act *if the Administrator and Commission find such inconsistency to exist and declare their purpose to supersede this Act to resolve such inconsistency,* and may contain classifications, differentiations or other provisions, and *may provide for adjustments and exceptions for any class of transactions subject to this Act* which in the judgment of the Administrator are necessary or proper to effectuate the purposes or to prevent circumvention or evasion of, or to facilitate compliance with, the provisions of this Act relating to disclosure of credit terms." [Emphasis added].

The above quoted provision, in addition to creating obligations on the part of Administrator, also empowered the Administrator to make adjustments and exceptions for any class of transaction subject to the Act.

The Administrator, with the approval of the Commission, has adopted Rules of Administrator, Department of Consumer Affairs, Uniform Consumer Credit Code, commonly referred to as State Regulation Z. Section 226.3 of State Regulation Z provides in part:

1. 14A O.S. §§ 1–101 to 9–103.

2. *Consumer Credit Protection Act, 15 U.S.C. §§ 1601 to 1681t (1970),* commonly known as the "Truth in Lending Act." This duty extends to adopting rules not inconsistent with Federal Reserve Board Regulation Z, 12 C.F.R. § 226 (1970), as amended, commonly called Regula-

tion Z. This is so, for the Consumer Credit Code defines the term "Federal Consumer Credit Protection Act" to mean the Consumer Credit Protection Act as amended, including regulation issued pursuant to the Act. 14A O.S. § 1–302.

"This part does not apply to the following:

(a) * * *

(b) * * *

(c) * * *

(d) *Certain public utility bills.* Transactions under public utility tariffs involving services provided through pipe, wire, or other connected facilities, if the charges for such public utility services, the charges for delayed payment, and any discount allowed for early payment are *filed with, reviewed by, or regulated by an agency of the Federal Government, this State, or a political subdivision thereof.*" [Emphasis added].

The stipulated facts in the case now before us clearly demonstrate that the Utility Board of the City of Tulsa has the authority and duty of affixing and establishing rates and prices for City water services.

Such rates are subject to the approval or disapproval of Tulsa's City Board of Commissioners who can either totally accept or totally reject the Utility Board's recommendation. The rates involved were approved by the Board.

■ Because Tulsa's Utility Board sets the rates in question, because the rates are subject to the approval of the City's Board of Commissioners, we hold that a subdivision of this State regulates the charges for the water services involved, and that under Section 1–201, of Oklahoma's Consumer Credit Act and Section 226.3 of State Regulation Z, the utility transaction in the case before us is exempt from the provisions of the Oklahoma Consumer Credit Code and Oklahoma's Regulation Z.

## II

In May, 1970, the Board of Governors of the Federal Reserve System granted a State exemption to the State of Oklahoma under which most consumer credit transactions in the State of Oklahoma were exempted from many of the provisions of the Federal Consumer Credit Protection Act. 15 U.S.C. §§ 1601 to 1681t (1970), as amended.

Three classes of transactions were expressly excluded from the State exception granted to Oklahoma. One of these classes of transactions was:

"Transactions under common carrier tariffs in which the charges for the services involved, the charge for delayed payment, and any discount allowed for early payment are regulated by a subdivision or agency of the United States or the State of Oklahoma; * * *.'"

The provisions of the Federal Consumer Credit Protection Act, and Federal Regulation Z[3] provides that certain enumerated transactions are exempted. 15 U.S.C. § 1603 provides:

"This subchapter does not apply to the following:

(1) * * *

(2) * * *

(3) * * *

(4) Transactions under public utility tariffs, if the Board determines that a State regulatory body regulates the charges for the public utility services involved, the charges for delayed payment, and any discount allowed for early payment."

Section 226.3 of Federal Regulation Z provides:

"This part does not apply to the following:

(a) * * *

(b) * * *

(c) * * *

(d) *Certain public utility bills.* Transactions under public utility tariffs involving services provided through pipe, wire, or other connected facilities, if the charges for such public utility services, the charges for delayed payment, and any discount allowed for early payment are filed with, reviewed by, or regulated by

---

**3.** Federal Reserve Board Regulation Z, 12 C.F.R. § 226 (1970) herein referred to as Federal Regulation Z.

an agency of the Federal Government, a State, or a political subdivision thereof."

 Under the facts before us, we hold that although the transaction involved in the case at bar was not excluded from the provisions of the Federal Consumer Protection Act through the State exemption granted by the Federal Reserve Board, the transaction is exempt from the provisions of the Act under the above quoted provisions. We note that our interpretation of the utility exemption is in accord with the Federal Reserve Board's own interpretation of the exemption contained in Public Information Letters issued by the Board.[4]

### III

 The final question raised by the appeal is whether the City, in terminating customers' water service violates customers' constitutional rights by not providing for adequate notice, nor an opportunity to be heard. Appellant brought his action in the trial court on behalf of himself and all others like and similarly situated. Although the evidence before the trial court shed some light on the termination procedures generally followed by the City of Tulsa, the record is void of any facts showing that appellant has had his water terminated. This being the case, we believe that the due process issue is not properly before us, and that any opinion rendered by this Court at this time would be nothing more than an advisory opinion, which this Court will not give. *City of Shawnee v. Taylor,* 191 Okl. 687, 132 P.2d 950 (1943), (in which we held that this Court will not give advisory opinions), and *Dablemont v. State, Department of Public Safety,* Okl., 543 P.2d 563 (1975), (in which we held that a statute may not be attacked on constitutional grounds by one not injured thereby).

Having held that the provisions of the Uniform Consumer Credit Code, as enacted in Oklahoma, and the Federal Consumer Credit Protection Act, are not applicable to the transaction involved in litigation, and

having further found that the facts before us and the trial court did not raise a procedural due process issue, we uphold the action of the trial court.

AFFIRMED.

LAVENDER, V. C. J., and WILLIAMS, IRWIN, BERRY, SIMMS and DOOLIN, JJ., concur.

HODGES, C. J., and BARNES, J., concur in part, dissent in part.

---

4. See Public Information Letter No. 67, August 18, 1969, and Public Information Letter No. 80, August 22, 1969.