**GRANT SQUARE BANK AND TRUST COMPANY, a corporation, Appellee,**

v.

**Richard F. GREEN and Vicki A. Green, Appellants.**

**No. 53712.**

Court of Appeals of Oklahoma, Division No. 1.

May 19, 1981.

Released for Publication by Order of Court of Appeals June 18, 1981.

Steward & Bevard by Peggy L. Bevard, Oklahoma City, for appellee.

Porter H. Morgan, III, Steven L. Parker, Oklahoma City, for appellants.

PER CURIAM:

An appeal by the defendants below, Richard F. and Vicki A. Green, from a summary judgment and deficiency judgment entered for the plaintiff, Grant Square Bank & Trust Company.

On July 18, 1977, the Greens executed a promissory note to the Bank. As a part of the same transaction, the Greens executed a security agreement granting the Bank a security interest in a 1977 Toyota pickup and a 1972 Volkswagen Super Beetle as collateral to secure the note. Two months later the Greens defaulted on the note. The Bank used self-help to repossess the pickup and sold it at a private sale. The Bank filed a petition to replevy the Volkswagen and for a deficiency judgment.

The Greens' amended answer alleges that the Bank is not entitled to a deficiency judgment because the Bank did not sell the pickup in a commercially reasonable manner in violation of certain sections of the Uniform Commercial Code, 12A O.S.1971, §§ 9–101 to 9–507 (hereinafter cited by U.C.C. section number only).

The Greens' amended counterclaim sets forth two causes of action. Under the first they seek damages under section 9–507 for the Bank's alleged failure to sell the pickup in a commercially reasonable manner. Under the second the Greens seek damages for violation of certain disclosure provisions of the Uniform Consumer Credit Code, 14A O.S.1971, §§ 1–101 to 6–510, and Regulation Z, Rules of the Administrator of the Department of Consumer Affairs, State of Oklahoma.

Both parties moved for summary judgment. The trial court granted the Bank summary judgment on its petition finding that the sale of the pickup was commercial-

ly reasonable and granted the Bank a deficiency judgment representing the difference between the monies realized upon the sale and the balance due on the note. The trial court also granted the Bank summary judgment against the Greens on both causes of actions asserted by their counterclaim. The Greens appeal.

 The Greens assert on appeal that the granting of summary judgment was error. A summary judgment is properly granted when the facts set forth in detail show no substantial controversy as to any material fact. *First National Bank & Trust Co. v. Nesbitt*, 598 P.2d 1197, 1199 (Okl.). Whenever it is possible for reasonable men to reach different conclusions upon the facts, the granting of summary judgment is improper. *Gilmore v. St. Anthony Hosp.*, 598 P.2d 1200, 1202 (Okl.). Additionally, the inferences to be drawn from the materials must be viewed in the light most favorable to the party opposing the motion. *Northrip v. Montgomery Ward Co.*, 529 P.2d 489, 497 (Okl.). The Greens contend that the pleadings, interrogatories, admissions, affidavits, and trial briefs raised substantial controversy as to material facts making the granting of summary judgment improper and ask this Court to remand the case for a trial on the issues.

There are two separate issues before us. The first is whether the Bank as a matter of law sold the pickup in a commercially reasonable manner. If it did, then the summary judgment and the deficiency judgment were proper, if not, they must be set aside and this case remanded for trial on this issue. The facts attesting to the commercial reasonableness of the sale are primarily based on an affidavit submitted by the Bank's credit manager. The affidavit states that the Bank gave written notice of a public sale to the Greens as required by section 9–504(3). The credit manager states he gave oral notice of the sale to five individuals who allegedly regularly purchase repossessed automobiles, none of whom are named. His affidavit further asserts that in the interim between notice and the December 19, 1977, public sale he received an average of four phone calls a day from individuals interested in purchas-

ing repossessed automobiles and gave them notice of the December sale. No one appeared on December 19 to bid on the pickup. A second public sale was set for March 1, 1978, and the credit manager states he went through the identical process utilized for the December sale. Again no one appeared to bid on the pickup. The pickup was sold to a private individual on March 30, 1978, for $4,000 dollars.

The trial court found that "the Bank sold the pickup at public sale for the sum of $4,000, and, therefore, the repossession and sale of the pickup was made in a reasonable manner." We disagree. The pickup was not sold at public sale. The Bank's affidavit expressly states the Bank did not bid in or buy the car at either public sale. The affidavit recites that the pickup was sold to a private individual on March 30, 1978.

There is no question that the Bank had a right to repossess the pickup once the Greens were in default—either under the security agreement (§ 9–501(2)) or under section 9–503. Once the Bank repossessed, it had alternate means of disposal under section 9–504. It chose to sell the pickup, and in so doing had to comply with section 9–504(3). Section 9–504(3) requires the secured party (Bank) to send reasonable notification to the debtor (Greens) of a public or private sale. The Code does not define reasonable notification, but gives some insight as to what will constitute such in Comment 5 to section 9–504. Although the Bank alleged notification sent as to the two unconsummated public sales, *it does not even assert notification as to the actual sale* on March 30, 1978. Additionally, the Code specifies that every aspect of the sale must be commercially reasonable—including method, manner, time, place, and terms. § 9–504(3); § 9–504, Comment 6. Section 9–507(2) further delineates commercial reasonableness. It states in pertinent part:

> The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in

any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.

■ All the facts show is that the pickup was sold. There are no facts stated to substantiate that the sale was conducted in a commercially reasonable manner in keeping with the practice among others in the type of property sold. We do not intimate that the sale was not commercially reasonable, we only find that whether or not it was is a fact issue in dispute. The sale cannot be held to be commercially reasonable as a matter of law under the facts shown on the motion for summary judgment. *See Wilkerson Motor Co. v. Johnson*, 580 P.2d 505, 508–09 (Okl.). Fact issues remain as to whether proper notification of the private sale was given to the debtor as required by section 9–504(3) and whether the sale was commercially reasonable in every respect.

The second issue is whether the Bank complied with the disclosure provision of the Uniform Consumer Credit Code, 14A O.S.1971, § 3–306(2)(k) and the Regulation Z, §§ 226.6(c) and 226.8(b)(5), Rules of the Administrator of the Department of Consumer Credit, State of Oklahoma.

Section 3–306(2)(k) of title 14A provides:

(D)escription of any security interest held or to be retained or acquired by the lender in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

Section 226.6(c) of Oklahoma Regulation Z provides:

Additional information. At the creditor's option, additional information or explanations may be supplied with any disclosure required by this Part, but none shall be stated, utilized, or placed so as to mislead or confuse the customer or contradict, obscure, or detract attention from the information required by this Part to be disclosed.

Section 226.8(b)(5) of Oklahoma Regulation Z provides in pertinent part:

If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held. . . .

■ The security agreement in the present cases describes the two vehicles specifically pledged as collateral, then states that "(t)he described security also secures future advances. After-acquired property is subject to such security interest." The Greens' position is that this language fails to clearly identify the property to which the security interest relates as required by 14A O.S.1971, § 3–306(2)(k) and violates §§ 226.-6(c) and 226.8(b)(5) since it fails to reveal that pursuant to 12A O.S.1971, § 9–204(4)(b) no security interest attaches under an after-acquired property clause to consumer goods "unless the debtor acquires rights in them within ten days after the secured party gives value."

The Oklahoma Supreme Court has never addressed this issue. The parties presented arguments on this issue to the trial court in their trial briefs, and reassert these arguments on appeal. Regulation Z as adopted by the Administrator of the Department of Consumer Affairs to carry out the mandates of the Uniform Consumer Credit Code, 14A O.S.1971, §§ 1–101 to 6–510, is an adaptation of Federal Regulation Z promulgated by the Federal Reserve Board to carry out the policies set forth in the Federal Consumer Credit Protection Act, 15 U.S. C.A. § 1601 *et seq.* (The Truth In Lending Act). The sections of Oklahoma's Regulation Z in question are identical to the Federal Regulation Z sections. The Oklahoma Legislature has expressed an intent that consumer credit transactions should conform to the policies of the Federal Consumer Protection Act. 14A O.S.1971, § 1–102(f).

The Greens relied on several Federal Court opinions that hold disclosure statements purporting to take a security interest in after-acquired property must explain the ten day limitation of the Uniform Commercial Code section 9–204(4)(b) to be in compliance with section 226.8(b)(5) of Regula-

tion Z, which requires the *fact* that after-acquired property will be subject to the security interest be *clearly set forth* in identifying the security interest held. *Pollock v. General Finance Corp.*, 535 F.2d 295, 299 (5th Cir. 1976); *Bartlett v. Commercial Fed. S. & L. Ass'n of Omaha*, 433 F.Supp. 284, 286–87 (D.Neb.1977); *Ecenrode v. Household Finance Corp. of South Dover*, 422 F.Supp. 1327, 1331 (D.Del.1976); *Johnson v. Associates Finance Inc.*, 369 F.Supp. 1121, 1122–23 (S.D.Ill.1974).

However, the Bank asserts that if there is an administrative interpretation on the issue it should control. Federal Reserve Board Public Information Letter 983, by Jerauld C. Kluckman, Assistant Director, propounded on January 5, 1976, states in part:

Letter 829 addressed the situation in which a creditor discloses a security interest in *all* after-acquired property when the relevant State law only permits the acquisition of a security interest in those consumer goods in which the debtor acquires rights within 10 days after the secured party gives value. This limitation is found in § 9–204 of the Uniform Commercial Code, which is in effect in 49 States. The inquiring creditor had based this disclosure on the security interest description contained in Exhibit E of the Board's pamphlet *What You Ought to Know About Truth in Lending* and questioned whether reliance on the form would constitute a defense against civil liability under § 130(c) of the Act. Staff's response indicated that the description of the security interest must accurately reflect the type of security interest that may be validly acquired under State law, in order to comply with § 226.8(b)(5). Letter 829 has been interpreted to require that the 10-day limitation on after-acquired property be included in the security interest disclosure under that section.

Upon further consideration of that letter, staff believes that, to the extent that it would require a creditor to disclose limitations on after-acquired property, Letter 829 should be modified. In staff's opinion, it would be sufficient, in disclos-

ing an after-acquired property clause under § 226.8(b)(5), to state simply that the security interest covers such property, without further describing the manner and conditions under which the interest attaches. We believe that this would comply with the relevant provision in that section, which requires the creditor to clearly set forth the *fact* that after-acquired property will be subject to the security interest.

The United States Supreme Court recently addressed the issue of the weight a court should grant administrative interpretations in a case discussing a different disclosure provision of Federal Regulation Z than is present here. *Ford Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). The views expressed in that opinion indicate that in the absence of clear expression in the statute, the character of the statutory scheme must be considered. 444 U.S. at 560, 100 S.Ct. at 794–795. The opinion further states, 444 U.S. at 565, 100 S.Ct. at 797:

It is a commonplace that courts will further legislative goals by filling the interstitial silences within a statute or a regulation. Because legislators cannot foresee all eventualities, judges must decide unanticipated cases by extrapolating from related statutes or administrative provisions. But legislative silence is not always the result of a lack of prescience; it may instead betoken permission or, perhaps, considered abstention from regulation. In that event, judges are not accredited to supersede Congress or the appropriate agency by embellishing upon the regulatory scheme. Accordingly, caution must temper judicial creativity in the face of legislative or regulatory silence.

At the very least, that caution requires attentiveness to the views of the administrative entity appointed to apply and enforce a statute. And deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive for several reasons.

Thus, under the *Ford* rationale, Public Information Letter 983 is dispositive of the second issue. The trial court properly found that the Bank was not in violation of the disclosure sections in question. Summary judgment on this issue was appropriate.

We remand this case for a trial on the issue of whether the Bank's sale of the repossessed pickup was commercially reasonable. We instruct the trial court to set aside the summary judgment for the Bank on its petition and on the Greens' first cause of action in their counterclaim because both go to the issue of commercial reasonableness. The summary judgment for the Bank on the Greens' second cause of action in their counterclaim is affirmed under the authority set out above.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR TRIAL.

All Judges concur.