No. 95,543

DECISION POINT, INC., *Appellant*, v. REECE & NICHOLS
REALTORS, INC., *Appellee*.

144 P.3d 706

Opinion filed
October 27, 2006.

*W. Joseph Hatley*, of Lathrop & Gage L.C., argued the cause, and *Rebecca J. King*, of the same firm, was with him on the briefs for the appellant.

*Loren W. Moll*, of Caldwell & Moll, L.C., of Overland Park, argued the cause, and was on the brief for the appellee.

*Vernon L. Jarboe* and *Martha A. Peterson*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, were on the brief for *amicus curiae* Kansas Association of Realtors.

*Mark Ovington*, of Shook, Hardy & Bacon, L.L.P., of Kansas City, Missouri, was on the brief for *amicus curiae* Individual Real Estate Agents.

*Arthur E. Palmer*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, was on the brief for *amicus curiae* International Factoring Association.

The opinion of the court was delivered by

ROSEN, J.: Decision Point, Inc., d/b/a Commission Express (Commission Express), advanced money to two real estate agents who worked for Reece & Nichols Realtors, Inc. (Reece & Nichols) in return for the assignment of their commissions. Reece & Nichols paid the real estate agents rather than paying Commission Express directly. When the real estate agents defaulted on the agreement with Commission Express by failing to tender payment, Commission Express sued Reece & Nichols for payment of the commissions. The district court granted summary judgment to Reece & Nichols, and Commission Express appeals. We granted motions to file amicus briefs pertaining to this matter. The arguments raised in the amicus briefs were considered and are not determinative of the issues raised in this case.

## FACTS

Commission Express is in the business of providing cash advances to real estate agents who have commissions pending from real estate transactions. In return for the advance, Commission Express takes a percentage of the real estate commission. The percentage is based on when the real estate transaction closes. For transactions closing within 30 days, Commission Express takes 8% of the anticipated commission. For transactions scheduled to close within 31-60 days, Commission Express takes 10% of the anticipated commission, and for transactions closing in 61 to 90 days, the fee is 14% of the anticipated commission. In addition, Commission Express subtracts a 10% holdback, which is refunded to the real estate agent if the real estate agent does not default on the agreement.

Commission Express requires real estate agents to sign a Master Repurchase and Security Agreement (Agreement), which irrevocably assigns the real estate agent's rights to receive the pending commission to Commission Express and authorizes the settlement agent or real estate company to pay Commission Express directly. The real estate agent must acknowledge that the transaction is "**not**

**a loan or a consumer transaction, but the sale of a business account receivable at a discount for commercial purposes.**" If the assigned commission is insufficient to satisfy the obligation, the real estate agent must immediately pay the deficiency and any penalties assessed by the Agreement. If the commission is not paid because the real estate transaction fails to close, the agent is required to "repurchase the accounts receivable" for the full amount of the assigned commission. In addition, the Agreement grants Commission Express a security interest in all of the real estate agent's current and future commissions, accounts, general intangibles, contract rights, leases, chattel paper, other rights to receive money, and all cash and noncash proceeds from the foregoing items.

The litigation in this case resulted from six cash advances Commission Express extended to two different real estate agents who had contracted to sell real estate for Reece & Nichols, a real estate brokerage firm incorporated in the state of Kansas. Troy Beeman received cash advances based on the anticipated commissions for five different real estate transactions. Vicky Ashby received one cash advance based on the anticipated commission for a single real estate transaction. Ashby and Beeman each signed Commission Express's Agreement, assigning their rights in the commissions to Commission Express and authorizing Reece & Nichols to pay Commission Express directly. Ashby used the money to pay for her son's medical expenses. Beeman used the money for household expenses and gambling.

Commission Express filed the necessary documents to perfect its security interests. Commission Express also notified Reece & Nichols of Ashby's and Beeman's assignments. Nevertheless, Reece & Nichols paid the assigned commissions directly to Ashby and Beeman rather than Commission Express. Ashby and Beeman defaulted on their Agreements with Commission Express by failing to pay the commissions to Commission Express. As a result, Commission Express sued Reece & Nichols for payment.

Both parties filed summary judgment motions. The district court granted the motion filed by Reece & Nichols, concluding that the Uniform Consumer Credit Code (UCCC) precluded the assign-

ment of the real estate agents' earnings. Commission Express appeals the district court's decision, claiming that the district court should have applied the Uniform Commercial Code (UCC) rather than the UCCC. We granted Commission Express's motion to transfer the matter from the Court of Appeals pursuant to K.S.A. 20-3017.

## ANALYSIS

The key to resolving Commission Express' appeal is determining which code applies, the UCCC or the UCC. Such a determination requires us to interpret the statutes comprising the codes. Interpretation of a statute is a question of law subject to de novo review. *Gonzales v. Associates Financial Serv. Co. of Kansas*, 266 Kan. 141, 148, 967 P.2d 312 (1998).

Commission Express asserts that the transactions at issue are secured transactions governed by Article 9 of the UCC. According to Commission Express, it purchased the real estate agents' accounts for a discount rather than issuing credit. The UCC broadly defines the term "account" to include "a right to payment of a monetary obligation, whether or not earned by performance . . . for services rendered or to be rendered." K.S.A. 2005 Supp. 84-9-102(2)(B). K.S.A. 2005 Supp. 84-9-406(a) requires an account debtor to discharge the debt by paying the assignee, not the assignor. Commission Express claims that the UCCC does not apply because the transactions at issue are not consumer transactions.

Reece & Nichols, on the other hand, claims that the district court properly applied the UCCC because the cash advances received by Ashby and Beeman were consumer loans used for personal, family, or household purposes. Noting that the UCCC begins with the premise that consumers cannot waive or agree to forego the rights under the code, Reece & Nichols asserts that the UCC does not apply because the commissions were earnings. See K.S.A. 16a-1-107(1).

The Kansas codification of the UCCC, K.S.A. 16a-1-101 *et seq.*, applies to all consumer credit transactions that occur in this state. K.S.A. 2005 Supp. 16a-1-201(1). A consumer credit transaction occurs in this state if a signed writing evidencing the obligation is

received by the creditor in this state. K.S.A. 2005 Supp. 16a-1-201(1)(a). The parties do not dispute that Ashby and Beeman executed signed Agreements evidencing their obligations to Commission Express at the Commission Express office in Overland Park, Kansas. Having determined that the transactions occurred in Kansas, the next question is whether the transactions are consumer credit transactions.

A consumer credit transaction is a "consumer credit sale, consumer lease, or consumer loan or modification thereof including a refinancing consolidation, or deferral." K.S.A. 2005 Supp. 16a-1-301(15). Pursuant to K.S.A. 2005 Supp. 16a-1-301(17)(a), a consumer loan is

"a loan made by a person regularly engaged in the business of making loans in which:
"(i) The debtor is a person other than an organization;
"(ii) the debt is incurred primarily for a personal, family or household purpose;
"(iii) either the debt is payable by written agreement in more than four installments or a finance charge is made; and
"(iv) either the amount financed does not exceed $25,000 or the debt is secured by an interest in land."

Applying the UCCC's definition for consumer loan, Commission Express offers two arguments to support its claim that this case does not involve a consumer transaction. First, Commission Express argues that the real estate agents were not consumers under the UCCC. Second, Commission Express argues that the money received by the real estate agents was not used for personal, family, or household purposes.

Commission Express argues that the UCCC definition of consumer is circular because a consumer loan requires a finance charge, a finance charge requires a consumer, and a consumer is the "debtor to whom credit is granted in a consumer credit transaction." See K.S.A. 2005 Supp. 16a-1-301(13), (17), and (22). We disagree with this argument. These sections can be readily applied to the facts in this case.

The UCCC imposes five requirements for meeting the definition of a consumer loan. See K.S.A. 2005 Supp. 16a-1-301(17). First, the UCCC requires the creditor to be regularly engaged in the

business of making loans. K.S.A. 2005 Supp. 16a-1-301(17)(a). The UCCC defines a loan as "the creation of debt by the lender's payment of or agreement to pay money to the debtor." K.S.A. 2005 Supp. 16a-1-301(27)(a)(i). The UCCC does not give a special definition for debt. However, the common definition is "a specific sum of money due by agreement or otherwise." Black's Law Dictionary 432 (8th ed. 2004). Although Commission Express asserts that it purchases accounts for a discount rather than making loans, it does not dispute that it is in the business of providing money to real estate agents in return for the real estate agents' agreement to repay the money either through the assignment of the commission or the repurchase of the account. Essentially, Commission Express creates debt by paying money to the real estate agents before their commissions become available. This type of transaction qualifies as a loan under the UCCC, making Commission Express "a person regularly engaged in the business of making loans." K.S.A. 2005 Supp. 16a-1-301(17)(a). Thus, the facts in this case establish the first requirement for a consumer loan.

To comply with the second requirement for a consumer loan, the debtor must be a person, not an organization. K.S.A. 2005 Supp. 16a-1-301(17)(a)(i). The UCCC defines person as "a natural person or an individual, and an organization." K.S.A. 2005 Supp. 16a-1-301(33). However, the definition for consumer loan further limits the UCCC definition of person to exclude organizations. In this case, Ashby and Beeman engaged in transactions with Commission Express as individuals rather than business entities. Consequently, the facts in this case satisfy the second requirement for a consumer loan. See K.S.A. 2005 Supp. 16a-1-301(17)(a)(I).

To satisfy the third requirement for a consumer loan, the debt must be incurred primarily for personal, family, or household purposes. K.S.A. 2005 Supp. 16a-1-301(17)(a)(ii). Ashby testified that she used the money for her son's medical expenses. Beeman testified that he used the money for household expenses and gambling. Commission Express argues that the agents may have used the money for business expenses like advertising, telephone bills, vehicle expenses, membership dues, or licensing fees because they comingled their personal and business accounts. However, there

is no evidence in the record to dispute the agents' testimony that they used the money for medical expenses, household expenses, and gambling, all of which fall within the category of primarily personal, family, or household purposes. The record also indicates Reece & Nichols pays for the vast majority of their sale agents' business expenses. Reece & Nichols pays for office space, conference rooms, photocopiers and printers, clerical help, and a monthly advertising allowance. Other than automobile and cell phone expenses and other incidental, minor expenses, real estate agents use their commissions primarily for personal living expenses. As a result, Commission Express' claim that the transaction was not a consumer transaction because the money was not used for personal, family, or household purposes is without merit, and the third requirement for a consumer loan has been met. See K.S.A. 2005 Supp. 16a-1-301(17)(a)(ii).

To fulfill the fourth requirement for a consumer loan, the debt must be payable in four or more installments or the creditor must impose a finance charge. K.S.A. 2005 Supp. 16a-1-301(17)(a)(iii). The UCCC defines finance charge as "all charges payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit." K.S.A. 2005 Supp. 16a-1-301(22). The president of Commission Express admitted that he discounted each cash advance as a condition for the advance. The discount was based on a variable percentage rate depending on when the underlying real estate transaction was scheduled to close. Commission Express issued a check to the real estate agents for the amount of the anticipated commission less the discount and a 10% holdback in case the agent defaulted on the Agreement. Although Commission Express characterized the transaction as the purchase of an account for a discount, the discount is equivalent to a charge payable by the consumer and imposed directly by Commission Express, the creditor, as a condition for the extension of credit. Commission Express' characterization of the transaction is not definitive regarding the application of K.S.A. 2005 Supp. 16a-1-301(17)(a)(iii). Because the discount charged by Commission Express is equivalent to a financing charge, the fourth requirement for a consumer

loan has been satisfied. See K.S.A. 2005 Supp. 16a-1-301(17)(a)(iii).

To satisfy the fifth requirement for a consumer loan, the debt must not exceed $25,000 or the debt must be secured by an interest in land. K.S.A. 2005 Supp. 16a-1-301(17)(iv). The debt incurred by Ashby was $2,500. Beeman incurred several debts from multiple transactions with Commission Express. For each individual transaction in the Kansas City metropolitan area, Beeman incurred the following debt:

| 1. 162 Pointe Drive | $5,317.50 |
|---|---|
| 2. 158 Pointe Drive | $2,931.16 |
| 3. 10315 N. Kensington Court | $4,012.50 |
| 4. 3228 NW. Castle Drive | $2,398.75 |
| 5. 11311 N. Booth Street | $3,578.87 |

Each transaction for Ashby and Beeman was less than $25,000. Therefore, the fifth requirement of a consumer loan is satisfied. See K.S.A. 2005 Supp. 16a-1-301(17)(a)(iv).

The transactions between Ashby and Beeman and Commission Express satisfy all of the UCCC requirements for a consumer loan. See K.S.A. 2005 Supp. 16a-1-301(17). Because a consumer loan qualifies as a consumer credit transaction under the UCCC, the district court properly concluded that Commission Express entered into consumer credit transactions with Ashby and Beeman. See K.S.A. 2005 Supp. 16a-1-301(15). The UCCC applies to all consumer credit transactions that occur in Kansas. K.S.A. 2005 Supp. 16-1-201(1). Therefore, the district court properly concluded that the transactions between Commission Express and Ashby and Beeman are governed by the UCCC.

Next, we must determine if the district court properly granted Reece & Nichols' motion for summary judgment. After determining that the cash advances made by Commission Express were consumer loans subject to the UCCC, the district court concluded that the commissions paid by Reece & Nichols to the real estate agents were earnings under the UCCC. Relying on the UCCC prohibition against the assignment of earnings, the district court granted Reece & Nichols' motion for summary judgment. Com-

mission Express does not argue that the district court improperly characterized the commissions as earnings subject to the UCCC prohibition on assignment. Nevertheless, we will address the applicable sections of the UCCC to determine whether the district court properly granted summary judgment in favor of Reece & Nichols:

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' [Citation omitted.]" *Pankratz Implement Co. v. Citizens Nat'l. Bank*, 281 Kan. 209, 213, 130 P.3d 57 (2006).

The district court relied on K.S.A. 16a-3-305, which provides:

"(1) A creditor may not take an assignment of earnings of the consumer for payment or as security for payment of a debt arising out of a consumer credit transaction. An assignment of earnings in violation of this section is unenforceable by the assignee of the earnings and revocable by the consumer. This section does not prohibit an employee from authorizing deductions from his earnings if the authorization is revocable.

"(2) A sale of unpaid earnings made in consideration of the payment of money to or for the account of the seller of the earnings is deemed to be a loan to him secured by an assignment of earnings."

K.S.A. 16a-3-305 only applies to earnings, so it is necessary for us to determine whether the commissions at issue in this case were earnings. The UCCC defines earnings as "compensation paid or payable to an individual or for such individual's account for personal services rendered or to be rendered by such individual, whether denominated as wages, salary, commission, bonus, or otherwise." K.S.A. 2005 Supp. 16a-1-301(21). The Kansas Comment for K.S.A. 2005 Supp. 16a-1-301(21) demonstrates the legislature's intent that the definition of earnings be applied broadly enough "to include sums owed to independent contractors."

The district court noted several factors in determining whether these real estate commissions are considered earnings:

"These real estate agents are not paid any regular wages. Their commissions are their only earnings for their work. This is not a 'salary plus commissions' or 'salary plus bonus' arrangement.

"These real estate agents pay very few of their business expenses out of their share of the commissions. Reece and Nichols pays nearly all of their business

expenses. The agents do not pay salaries for employees, nor do they pay rent, telephone or copying expenses, or advertising expenses. All of these expenses are paid by the broker out of its share of the commissions that the agents earn by selling real estate. Virtually the only business expenses the agents pay are their car and cell phone expenses.

"After deducting the broker's share of the commissions, the commissions are paid out to the agents for their personal and family expenses, or whatever they wish to use them for.

"The realtors' commissions are their sole source of income from their labor; they are not entitled to receive any residual commissions that stretch far into the future, as insurance agents do for renewal commissions."

Both Ashby and Beeman contracted with Reece & Nichols to provide their personal services as independent contractors to sell houses for Reece & Nichols. The commissions at issue in this case were earned by Ashby and Beeman for their personal services in selling real estate on behalf of Reece & Nichols. The record also indicates that commissions were subject to court-ordered wage garnishments. Applying the definition of earnings broadly as the legislature intended, we agree with the district court's conclusion that the commissions owed to Ashby and Beeman by Reece & Nichols are earnings under the UCCC.

Because the commissions at issue are earnings under the UCCC, K.S.A. 16a-3-305(a) applies. Ashby and Beeman assigned their earnings in violation of K.S.A. 16a-3-305(a). As a result, Commission Express cannot enforce the assignment against Reece & Nichols. See K.S.A. 16a-3-305(a). We compliment the district court for its thorough, well-reasoned memorandum decision and affirm its grant of summary judgment on behalf of Reece & Nichols.

Affirmed.